## In re PAOLI LITHIA SPRINGS HOTEL CO.

### JEFFERY v. RATTS (two cases).

(Circuit Court of Appeals, Seventh Circuit. March 19, 1925. Rehearing Denied May 14, 1925.)

### Nos. 3407, 3408.

1. **Mortgages ⬚⟱249(3)—Owner of claim secured by mortgage on property purchased by bankrupt held entitled to secured claim.**

Where two of bankrupt's directors, after purchasing property subject to mortgage, and after being notified that mortgagee had assigned mortgage, obtained release of mortgage from mortgagee who because of feeble health had likely forgotten assignment, *held*, one owning debt secured by mortgage was entitled to secured claim against bankrupt.

2. **Bankruptcy ⬚⟱463—Where evidence heard by referee and District Court is not presented, questions of evidence must be resolved against appellants.**

On appeal from ruling on claim, where all evidence heard by referee and District Court

is not presented, all questions of evidence must be resolved against appellants.

**3. Bills and notes ⬥134—Note of bankrupt corporation and collateral agreement held independent contracts.**

Note given by bankrupt corporation and collateral agreement for deposit of mortgage bonds as security *held* independent contracts.

**4. Subrogation ⬥33(2) — Indorser paying note subrogated only to rights of holders in collateral security.**

Indorser paying note does not hold as purchaser, and is subrogated only to rights of holders in collateral security.

**5. Corporations ⬥404(2), 406(2)—Under Indiana law, president of private corporation has no ex officio power to bind corporation or control its property.**

Under Indiana law, president of private corporation has no ex officio power to bind corporation or control its property.

**6. Bills and notes ⬥340—Corporation held not liable on note fraudulently sold by a majority of its directors.**

Where three of five directors, acting without authority, executed note, and two of them, falsely representing that corporation owed one of such directors a large sum, negotiated it, permitting part of proceeds to be retained by purchaser in satisfaction of claims against such director individually, and depositing mortgage bonds as security, *held*, that such purchasers were not innocent purchasers, and corporation was not liable on note, and indorser paying it could not enforce the security.

Appeals from the District Court of the United States for the District of Indiana.

In the matter of the bankruptcy of the Paoli Lithia Springs Hotel Company; Oscar Ratts, trustee. From rulings on claims presented, two appeals have been taken by Harold W. Jeffery. Affirmed.

Harry N. Weinberg and Theodore E. Rein, both of Chicago, Ill., for appellant.

James A. Ross, of Indianapolis, Ind., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. No. 3407 is an appeal from an order of the District Court, allowing the claim of Mary T. Smith as a secured claim against the Paoli Lithia Springs Hotel Company, an Indiana corporation, in bankruptcy. In No. 3408 appellant was refused allowance of his claim as a secured claim, because the court held he was not entitled to the benefit of collateral, securing a note set out herein and paid by him as indorser.

[1] No. 3407. The Smith claim was allowed as a secured claim because claimant owned a debt, secured by a mortgage to one Boyd on property purchased by bankrupt subject thereto. Irwin and Bainum, president and secretary, respectively, of bankrupt, and also two of its directors, secured a release of that mortgage from Boyd, another director, 10 days after they, acting for bankrupt, agreed in writing to take the property subject to the mortgage, and 10 days after they had been told that Boyd did not hold it, but that it was then held by one Judge Paine. It had been assigned a year before by Boyd to Paine, but Boyd was in feeble health and had probably forgotten the assignment. He is now dead. Securing the release was an act of bad faith and a fraud upon the rights of Mrs. Smith, who was not at fault.

No. 3408. By special authority from bankrupt's board of five directors, in a regular meeting authorizing them so to do, Irwin, president, and Bainum, secretary, executed a deed of trust to the Paoli State Bank, as trustee, on bankrupt's property, and executed and delivered to the trustee $500,000 in bonds, secured by the trust deed, so that the bonds might be delivered to Binkley & Bund, who had purchased them under an agreement also authorized by the board at the same meeting. Binkley & Bund never took or paid for a single bond.

Irwin, president, Wham, vice president, and Bainum, secretary and treasurer, three of the directors, without in any way being authorized so to do, executed in the name of bankrupt, and tried to sell in Chicago, a note for $55,000; but even after Ayers, vice president of Binkley & Bund, had procured its indorsement by appellant, it could not be sold. Irwin and Wham attended what the bankers said was a meeting of Wham's creditors, who were trying to force payment by him of about $30,000, which he owed them. Wham and Irwin falsely represented to the bankers that bankrupt owed Wham $20,000, when in fact it owed him but $3,500. They made an arrangement there, which was later consummated at Indianapolis, whereby the bankers took the note and credited bankrupt with $35,000, and applied $20,000 in payment of Wham's debts to them. Of the $35,000, $7,500 was given Binkley & Bund, apparently as a gratuity, and $3,000 to appellant for his indorsement. The note reads:

"Paoli, Indiana, October 22, 1921.
"$55,000.00.

"On or before February 10, 1922, we promise to pay to ourselves or order at —— fifty-five thousand and no/100 dollars, for value received, with interest at the rate of seven (7) per cent. per annum, after

date, having deposited as collateral security first mortgage bonds of the Paoli Lithia Springs Hotel Company in number and amount as per schedule hereto attached, and marked Exhibit A. Said bonds are now on deposit with the Continental & Commercial National Bank of Chicago, Illinois, and in case of default in the payment of this note at maturity we hereby authorize the trustee named in said bond issue to deliver said bonds to the legal holder hereof. The right is hereby expressly reserved to withdraw any or all of the bonds herein referred to upon payment to the Continental & Commercial National Bank of 87½ per cent. of the par value of said bonds so withdrawn, together with accrued interest thereon; but all payments so made and received by the Continental & Commercial National Bank shall be forthwith remitted by the trustee to the legal holder hereof until the payment of this note is made in full, together with accrued interest thereon. We hereby give the said legal holder authority to sell all and any part thereof, on the maturity of this note, or any time thereafter, at public or private sale, at their discretion, without advertising the same, or giving us any notice, and to apply so much of the proceeds thereof to the payment of this note as may be necessary to pay the same, with all interest due thereon, and also to the payment of all expenses attending the sale of said bonds, and in case the proceeds of the sale of the said bonds shall not cover the principal, interest, and expenses, we promise to pay the deficiency forthwith after such sale.

"Paoli Lithia Springs Hotel Company,
   "By W. C. Irwin, President.
   "By Chas. A. Bainum, Treasurer.
"Due February 10th, 1922.
"[$11 in canceled documentary stamps.]"
Indorsed on back:
   "Paoli Lithia Hotel Company,
      "By W. C. Irwin, President.
      "By Chas. A. Bainum, Treasurer.
   "Binkley & Bund, Inc.
"By J. W. Rankin, President and Treasurer.
   "Iroquois Trust Company,
      "By R. M. Ayers, President.
      "By J. W. Rankin, Treasurer.
   "W. C. Irwin.
   "Chas. A. Bainum.
   "Wm. Wham.
   "J. W. Rankin.
   "R. M. Ayers.
   "H. W. Jeffery."

[2] The trustee, on a written order, as its cashier testified, from Irwin and Bainum, directed the Chicago bank, where it left the bonds for safe-keeping, to turn the bonds over to the holders of the note. No such order is in the record. All questions on the evidence must be resolved against appellant, because there was much evidence before the referee and the District Court not presented here. Upon payment of the note by appellant, as indorser, the bonds were delivered to him. He was not a witness.

The bankers knew Irwin, Wham, and Bainum were officers and directors of bankrupt, and investigated bankrupt's property at Indianapolis. They asked what the minutes of its meeting showed, but never examined them, although they seemed to know they were important. The by-laws provided for an executive committee of four members. Only three, the directors above named, were appointed. What the committee's powers were does not appear, and the three never pretended to act as such. The treasurer made a report, after the loan, that was approved by the directors; but whether others than the three in question were present does not appear, and the report as submitted did not honestly reflect the transaction.

[3] 1. The note and the collateral agreement therewith are two contracts, not one.

[4] 2. Appellant did not buy the note, but paid it as an indorser. He was, as to the collateral, only subrogated to the rights of the holders to whom the note was negotiated, and his rights thereto are measured by their rights. 2 Williston on Contracts, § 1265, p. 2302; Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 S. Ct. 625, 31 L. Ed. 537; Hunningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; Phœnix Ins. Co. v. Erie Transportation Co., 117 U. S. 312, 6 S. Ct. 750, 29 L. Ed. 873.

[5] 3. The Supreme Court of Indiana has stated the general rule as to the powers of presidents of corporations to be: "That the office of president of a private corporation of itself confers no power on the incumbent to bind the corporation or control its property. His powers as agent must come by delegation from the corporation through the board of directors, formally and directly granted, or implied from its habit or custom of doing business." Wainwright v. Roots Co., 176 Ind. 682, 686, 97 N. E. 8, 9, and cases cited. The Wainwright Case concerned a manufacturing corporation, and there would seem to be greater reason to apply even a stricter rule to the officers of bankrupt, a voluntary nontrading hotel corpora-

tion. St. Vincent College v. Hallett, 201 F. 471, 119 C. C. A. 647 (7th C. C. A.); In re Continental Engine Co., 234 F. 58, 148 C. C. A. 74 (7th C. C. A.).

4. It is said that the acts upon which appellant relies were the acts of a majority of the board of directors, and therefore binding on bankrupt. It does appear that Irwin, president, Wham, vice president, and Bainum, secretary and treasurer, were three of the five directors; but as there is no record authorizing their acts, even if they are to be considered as acting as directors, we must look solely to what they did. In the Wainwright Case, supra, the court said: "The general rule seems to be that where the contract between a corporation and one of its directors is made on the part of the company by a majority of the directors acting for its interests, honestly and in good faith, and with full knowledge of the matter, or by another independent agent with authority to act for it, such contract is not even voidable, except for unfairness or fraud, for the presence of which courts will closely scrutinize the contract."

[6] Irwin and Wham, in falsely representing to the bankers that the debt of bankrupt to Wham was nearly six times as large as it actually was, were not dealing fairly as directors or officers. Wham, in taking bankrupt's money to pay his debts, defrauded the corporation. His act was no less a fraud because the bankers believed what Wham and Irwin said about the amount of bankrupt's debt to Wham. When they took bankrupt's money to pay the debt of bankrupt's agent to themselves, they took at their peril. They were not innocent purchasers, and the unfaithful servant could not bind the master. Bank v. Nichols & Shepard Co., 223 Ill. 41, 79 N. E. 38, 7 L. R. A. 752; Campbell v. Balcomb, 183 F. 766, 106 C. C. A. 474 (7th C. C. A.); Am. Nat. Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310; 2 Corpus Juris, 868, § 549. No course of dealing by Irwin and Bainum existed from which authority in them to bind bankrupt might be presumed. The only other act by them, pertaining to a loan, was specially authorized by the board of directors and ratified by the stockholders. The note was not the note of bankrupt, and the purchasers of the note had, and appellant has, no right to enforce collection of the collateral.

It is also to be noted that the provisions of the trust deed, under which appellant is claiming, are sufficient notice to him that, without some special authority, neither the trustee nor Irwin and Bainum had any power to hypothecate the bonds.

The orders in Nos. 3407 and 3408 are both affirmed.