## In re DIXON.

## In re RICE.

District Court, W. D. New York. June 17, 1927.

**Bankruptcy ⟷421(1)—Judgment against bankrupt held for dischargeable debt (Bankruptcy Act [11 USCA § 35]).**

Judgment against bankrupt, based on finding that, as director of a national bank he negligently permitted the officers to make loans in excess of the statutory limit, but that "no fraud, embezzlement, misappropriation, or defalcation was committed," held a provable debt, not within the exception of Bankruptcy Act, § 17 (11 USCA § 35), and from which bankrupt would be released by his discharge.

In Bankruptcy. In the matter of Edward B. Dixon and of John P. Rice, bankrupts. On motions by bankrupts for order restraining enforcement of executions against the person under a judgment against them. Stay granted.

George F. Bodine, of Waterloo, N. Y. (Harris, Beach & Matson, of Rochester, N. Y., of counsel), for bankrupts.

James M. E. O'Grady and James D. Harris, both of Rochester, N. Y., for judgment creditors.

HAZEL, District Judge. This a motion on a show cause to restrain plaintiffs from issuing execution against the person of the separate defendants on judgments recovered against them et al., in the Supreme Court of this state for large amounts. Both applications arise on the same facts, and may be decided together. All the defendants have appealed from the judgment against them to the Appellate Division, Fourth Department, but Rice and Dixon, now bankrupt, were unable to give security on appeal to stay execution, and levies were made and sales advertised. A stay of execution against the personal property was, however, granted by the Appellate Division on condition that the appeal be argued at the ensuing September term. Both Rice and Dixon were adjudicated bankrupt on April 28, and May 5, 1927, respectively, and they now invoke sections 11, 63a, and 17, of the Bankruptcy Act (11 USCA §§ 29, 35, 103), contending that the judgments are provable debts and may be discharged, and hence the order enjoining threatened body executions should be continued for twelve months from the date of adjudication, or until their discharge is determined.

The single question is whether the judgments come within the exceptions enumerated in section 17. It is well settled that a judgment ex delicto is a fixed liability, and, if owing at time of filing petition in bankruptcy, a release may be had unless it constitutes a liability "for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." To ascertain the character of the liability merged in the judgment, recourse must be had to the pleadings and findings of fact by the trial court. Plaintiffs maintain that the liability arose out of willful and malicious injuries to the person and property of the bank in whose behalf the judgment was recovered. It is not claimed that the relations of the directors were that of fiduciaries. The action was brought for violation of section 5200 of the U. S. Rev. St., as amended (12 USCA § 84) which, in so far as material, prohibit a banking association from making loans or discounts or investments in excess of 10 per cent. of its capital stock and surplus fund, provides that its total liabilities should not exceed 25 per cent. of the debt in the unimpaired capital stock and surplus, and by section 5239 (12 USCA § 93), the officers and directors of the bank were liable to it for their failure to honestly, intelligently, and carefully administer its affairs.

The gist of the inquiry at the trial was whether the directors of the Geneva National Bank permitted or suffered officers and employees of the bank to make loans in excess of the amount allowed by law, resulting in a loss to the bank, and (quoting from question No. 7 submitted to the jury) "knowing the same to be excessive, or which, by the exercise of reasonable diligence, they could have known to be excessive." This question, and kindred questions, were answered by the jury in the affirmative, and thereafter Judge Hill, who presided at the trial, adopted their answers, and generally and specifically embodied them in his findings of facts. The bill does not aver any willful disregard of the duties and obligations imposed by the statute, but apparently stresses negligent omissions to administer the affairs of the bank by suffering and permitting excessive loans to various persons, in some instances to irresponsible parties. Incidentally it is stated that such loans were recklessly and improvidently made to borrowers, and, in some instances, misconduct and breach of trust are set out. But the findings of the jury and of the court, as to both bankrupts, were that "no fraud, embezzlement, misappropriation, or defalcation was committed." This court is bound by the pleadings, findings, and judg-

ment as to the particular matters in litigation before the state court. Harper v. Rankin (C. C. A.) 141 F. 626. The record before me does not show recovery for fraud, false pretenses, or false representations, and no act essentially an act involving willful and malicious injuries to the person or property of another is specified or apparent.

I am cited to In re Munro (D. C.) 195 F. 817, in support of plaintiff's contention that the judgments and findings really involve a malicious injury to property, since the word "willful" implies doing a thing intentionally, and that the word "malice" should be taken in the sense of disregard of duty by which an intentional act of injury is committed. The citation, however, does not apply to the facts before me. The judgment, in the Munro Case, was for wrongful injury and forcible detainer of real property, the judgment debtor having been forcibly put off her premises. This, Judge Ray held, was an injury to her person, while depriving her of her lawful shelter was an injury to her person. It was equivalent to "an assault and battery perpetrated to make effectual the forcible detainer of which it formed a part," and such conduct, he said, was a willful and malicious injury.

In Peters v. U. S. (C. C. A.) 177 F. 885, it was decided that willful and malicious injury, under section 17 of the Bankruptcy Act, does not necessarily involve hatred or ill will, as a state of mind, but arises from the intentional wrong committed without just cause or excuse; and encroachment upon the marital rights of the husband in the person of his wife was an injury to his person and property.

While in McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. Ed. 205, a stock broker, to whom had been intrusted stock for sale, appropriated the proceeds to his own use without the knowledge and consent of the owner, the Supreme Court held this to be a willful and malicious injury to property from which the bankrupt could not be discharged.

A judgment arising from negligence causing personal injuries, however, is a provable claim, and comes within the exception of section 17. Lewis v. Roberts, 267 U. S. 467, 45 S. Ct. 357, 69 L. Ed. 739, 37 A. L. R. 1440.

It does not appear that the omissions of the bankrupt directors of the bank, to strictly obey the statute, were either willful or malicious or regardless of consequences. Their misconduct in failing to perform their statutory duties is not claimed to have been due to conspiracy or design. Their liability, it is believed, was purely civil, and the redress remedial. Yates v. Jones National Bank, 206 U. S. 158, 27 S. Ct. 638, 51 L. Ed. 1002. It constituted no appropriation to their own use, or doing an act of malicious or willful character.

Counsel for plaintiffs argued that, to determine the character of the basis for the judgments, it is necessary to examine, not only the pleadings, findings, and judgments, but also the evidence to discover the asserted willful and malicious injury to the bank. But the court is not, in my opinion, required to draw inferences from the evidence. In any event, putting aside any uncertainty, I think the injunction must be continued until the question of the discharges is determined, in order to protect both bankrupts from interference in compliance with the requirements of the act, and enable their obedience to its orders.

The stay is continued for twelve months from the date of adjudication, or until the determination of any objections that may be raised to their discharge in bankruptcy.